IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD C. DRAUGHN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:15-cv-2440 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | Magistrate Judge Deavers |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

Plaintiff, Gerald C. Draughn, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income.  This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9).  For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

I.   BACKGROUND

Plaintiff filed his application for benefits in April 2010, alleging that he has been disabled since March 17, 2009 due to sarcoidosis and asthma.  (R. at 148-51, 159.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Joel H. Friedman ("ALJ") held a hearing on April 20, 2012, at which Plaintiff, represented by counsel, appeared and testified.  (R. at

46–71.) Don Schader, a vocational expert, also appeared and testified at the hearing. (R. at 71-83.) On August 30, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 24–31.) On April 27, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff arrived to the hearing by train as he does not drive. (R. at 46.) At the time of the hearing, he no longer had a driver's license. (*Id.*) He was living in an apartment with his mother. (*Id.*)

Plaintiff testified at the administrative hearing that he cannot work due to fatigue, sharp pain in his abdomen, vomiting, and shortness of breath. (R. at 47.) He testified that breathing too much exacerbates his pain. (*Id.*) Plaintiff believed he could do a sitting job, but he could only sit for so long because of pain in his back and kidney stones. (R. at 47-48.) He estimated that he could sit for 30 minutes or stand for 30 to 60 minutes at a time. (R. at 48.)

He testified that he worked until 2010, "under the table." (R. at 48.) For four months, he worked on and off for a tree care company, cutting grass, lifting branches and tree trunks, and throwing them into the back of the truck. (R. at 48-49.) Prior to this job, he was installing tub walls, which is how he sustained his back injury. (R. at 49.)

At the time of the hearing he was taking Prednisone for his diagnosed sarcoidosis. (R. at 50.) He was also taking Tramadol for his back pain and he had two inhalers for COPD (Chronic obstructive pulmonary disease). (R. at 51.) His medications make him tired, his skin breaks out,

2

he experiences mood swings, and he gets hot and cold flashes. (R. at 52.) When questioned regarding his minimal earnings recorded, Plaintiff reported that he was also incarcerated for a year-and-a-half for non-payment of child support. (R. at 53-54.)

During a typical day, Plaintiff will sometimes cook and help his mother clean up. (R. at 56.) He cannot lift furniture or stand for long periods of time in the kitchen. (*Id.*) Plaintiff believed he could lift 20 pounds. (R. at 57.) He could "walk a couple of blocks." (R. at 58.)

Plaintiff described experiencing pain in his right shoulder daily. (R. at 58.) He cannot reach over his head at all. (*Id.*)

When examined by his counsel, Plaintiff testified that he "sometimes" experiences abdominal pain twice a day lasting from a couple of minutes to 45 minutes. (R. at 60.) He described the pain as sharp, stabbing pain. (*Id.*) Plaintiff rated his pain severity at a level of 11 on a 0-10 visual analog scale. (*Id.*) When he experiences this pain he "just take[s] it." (*Id.*) He also described his back pain at an 11, noting it shoots into his abdomen and his left leg goes numb. (R. at 62.)

### B. Vocational Expert Testimony

Don Schader testified as the vocational expert ("VE") at the administrative hearing. (R. at 71-83.) The VE testified that Plaintiff's past relevant employment as an advertising material distributor classified as a light, unskilled job; an installer, as a medium, skilled job; and a hand packager, as medium, unskilled but performed at the sedentary, semi-skilled level. (R. at 73-74.)

The ALJ posed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 76-79.) Based on Plaintiff's age, education, and work experience, as well as the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not

perform his past relevant work, but could perform 21,380 light, unskilled jobs in the regional economy of the Newark/Union area of New Jersey, and 3,013,910 jobs nationally, such as a mailroom clerk, office helper, ticket seller; and the sedentary job of charge account clerk, with 650 jobs in the region and 181,600 nationally.  (R. at 78-79.)

The VE further testified that there would be no jobs available if the hypothetical individual "would have difficulty because of the pain, or side effects of medication, or a combination of both, that he had difficulty maintaining his concentration, persistence, and pace on even a simple, routine job."  (R. at 81.)  Upon further cross-examination, the VE also testified that if the person were absent three or more days a month due to pain, he would not be able to maintain employment.  (R. at 82.)

### III.  MEDICAL RECORDS

#### A. Genesis Healthcare

Plaintiff was admitted to the hospital in March 2009 for abdominal pain.  Plaintiff underwent a mediastinoscopic biopsy which was found positive for noncaseating granulomas.  A CT scan showed scattered bilateral pulmonary infiltrates with some reticular densities and cylindrical bronchiectasis.  Liver function tests were elevated which the evaluator felt to be due to the same process (sarcoidosis).  A pulmonary function test was performed during the hospitalization which revealed an FEV1/FVC ratio of 83% of predicted.  Plaintiff was found to have hepatosplenomegaly, and periaortic adenopathy.  He was treated with Prednisone. (R. at 346-62.)

4

B.     Agron Elezi, M.D.

Plaintiff began treatment with primary care physician Dr. Elezi in June 2011 after he moved to New Jersey. (R. at 521, 535.)  Dr. Elezi ordered and received various laboratory reports and imaging studies.

A chest x-ray taken on October 3, 2011, showed prominent interstitial markings suggestive of sarcoidosis.  Further clinical correlation and evaluation was recommended.  (R. at 526.)  All readings on a hepatic function panel performed on October 31, 2011 were abnormal. (R. at 514.)  Imaging of Plaintiff's lumbosacral spine on November 30, 2011 revealed mild rotary levoscoliosis, osteoarthritis, partial sacralization of L-5 on the left side and probable calcified mesenteric lymph nodes.  (R. at 512.)  Plaintiff also underwent a hepatic ultrasound on November 30, 2011 which showed hepatomegaly. (R. at 511.)

On April 3, 2012, Dr. Elezi completed a medical source statement and opined that Plaintiff was limited to sitting 2 hours in an eight-hour day standing and/or walking for one hour in an eight-hour day, and would need to alternate between standing and sitting every 30 minutes. (R. at 535.)  He also opined that Plaintiff could occasionally lift less than ten pounds, could rarely climb stairs, bend, stoop, kneel, or crouch, never climb ramps, ladders, or scaffolds, and only occasionally balance.  (*Id.*)  Dr. Elezi further opined that Plaintiff could rarely reach in all directions, including overhead, occasionally handle, and frequently use fine manipulation and feeling.  (R. at 536.)  Dr. Elezi concluded that Plaintiff would be absent three or more days per month due to his impairments.  (*Id.*)

A CT scan of his abdomen and pelvis taken on April 12, 2012, showed marked splenomegaly with multiple round hypoechoic nodules within the spleen and kidneys,

5

compatible with sarcoidosis involvement of the abdomen. The CT also indicated the possibility of cirrhosis. (R. at 528-29.)

      C.      **Mark E. Weaver, M.D.**

Dr. Weaver examined Plaintiff for disability purposes on December 8, 2010. (R. at 408-16.) Plaintiff was alleging disability due to breathing problems and right shoulder problems. (R. at 408.) At the time of this examination, Plaintiff reported he was receiving no treatment as he is unable to afford it. He reported becoming short of breath when walking longer than 10 minutes, climbing half a flight of stairs, or lifting more than 20 pounds. He also wheezes when exposed to environments containing temperature extremes, excess heat, humidity, or chemical aerosols. (*Id.*) On examination, Plaintiff walked with a stiffened gait and a slight left limp and complained of left knee pain. (R. at 409.) He stated that he had injured his left knee earlier in the week. Plaintiff had multiple one-centimeter crusted sores on both lower legs, which he stated were secondary to sarcoidosis. His chest exam was normal. (R. at 410.) His active and passive range of motion were restricted in his right shoulder and left knee. No asymmetric muscle atrophy or spasm were found in the upper and lower extremities. Examination of his spine showed no evidence of spasm, no tenderness, and an active range of motion. (R. at 411, 413-16.) Strength testing against resistant joint motions showed ratchety inconsistency with pain inhibition and giving way in right shoulder and left knee but was normal in all other groups of extremities. Plaintiff was found to be neurologically intact. (R. at 411.)

Dr. Weaver concluded that, in view of his breathing problems and right shoulder and left knee problems, Plaintiff would be limited in activities that involved sustained standing, walking, climbing, squatting, stooping, crouching, kneeling, crawling, reaching with the right upper

extremity, and performing repetitive or moderate to heavy lifting and carrying activities. Dr. Weaver further opined that Plaintiff would be capable of performing physical activities involving sitting, occasional light lifting and carrying, handling objects, speaking, hearing, following directions, and travel. (R. at 412.)

Paul Knight, M.D., interpreted a pulmonary function test, taken as a part of this evaluation on November 15, 2010, as showing no significant obstruction to flow. He found a mild decrease in FVC and FEV which could not be further evaluated without lung volumes. There was no significant change after the use of a bronchodilator. (R. at 397-407.)

A follow-up pulmonary function test, performed on January 25, 2011, also interpreted by Dr. Knight, showed a moderately impaired DLCO (Diffusing Capacity of the Lung for Carbon Monoxide). (R. at 418-24.)

### D. State Agency Evaluation

On April 1, 2011, a state agency medical consultant, Dr. Lancaster, reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 425-32.) Dr. Lancaster found that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in a workday; and sit for about six hours in a workday. (R. at 426.) Plaintiff could frequently balance, stoop, kneel, crouch, or crawl but only occasionally climb ladders, rope, or scaffolds and climb ramps and stairs. (R. at 427.) Dr. Lancaster found that Plaintiff should avoid concentrated exposure to humidity, extreme heat and cold, and should avoid moderate exposure to fumes and odors. (R. at 429.) Dr. Lancaster based these limitations on breathing problems with sarcoidosis and asthma. (R. at 427, 429.) Dr. Lancaster found

Plaintiff partially credible, noting his reported symptoms weremore severe than would be expected from medical tests such as a chest x-ray and pulmonary function test. (R. at 430.)

On June 9, 2011, a state agency physician, Dr. Nikoloas Galakos, reviewed the record upon reconsideration and affirmed Dr. Lancaster's exertional limitations, but found Plaintiff could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds. (R. at 447.) Dr. Galakos found that Plaintiff would be limited in reaching occasionally overhead with his right shoulder. (R. at 448.) He found that the "[s]everity of symptoms is partially proportionate." (R. at 450.)   '

## IV. ADMINISTRATIVE DECISION

On August 30, 2012, the ALJ issued his decision. (R. at 21–31.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 14, 2010, the application date. (R. at 26.) The ALJ found that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff had the following severe impairments: sarcoidosis, chronic obstructive pulmonary disease (COPD), splenomegaly, and right shoulder impairment. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he is limited to occasional reaching overhead with the dominant right shoulder; occasional climbing stairs/ramps, balancing, stooping, kneeling, crouching or crawling; no climbing ladders/ropes/scaffolds; must avoid concentrated exposure to temperature extremes, wetness, humidity; and avoid even moderate exposure to fumes, odors, dust, gases, etc.

(R. at 26-27.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible. (R. at 27.) The ALJ assigned "little weight" to the opinion of Dr. Elezi, Plaintiff's treating physician, finding his sit, stand, and walk limitations were inconsistent with objective evidence. (R. at 29.) The ALJ also gave "little weight" to Dr. Weaver's consultative opinion, finding that his opinion as a whole was not consistent with the record and also citing his failure to quantify how many hours in an 8-hour work day Plaintiff could perform with the limitations he imposed. (*Id.*) The ALJ assigned "substantial weight" to Dr. Lancaster's opinion, and "great weight" to Dr. Galakos' opinion determining that "[t]hese assessments have reasonably taken into consideration the claimant's impairments and the level of severity of these impairments as documented in the record." (R. at 28.)

Relying on the VE's testimony, the ALJ concluded that even though Plaintiff is unable to perform his past relevant work, he can perform jobs that exist in significant numbers in the

9

national economy.  (R. at 29-31.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 31.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his Statement of Errors, Plaintiff asserts that the ALJ violated the treating physician rule by giving undue weight to the non-examining consultants' opinions of Drs. Lancaster and Galakos and by failing to give good reasons for granting "little weight" to Dr. Elezi's treating source opinion. (ECF No. 10 at Pgs. 6-13). Because the ALJ's failure to provide good reasons for rejecting the opinion of Plaintiff's treating physician is dispositive, the Court turns first to this issue.

**A.     Treating Physician's Opinion – Applicable Law**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory

11

diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors–namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source–in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v.*

12

*Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good-reason rule, an ALJ is not required to explicitly address all six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

**B.     Treating Physician's Opinion – Application**

The parties do not dispute that Dr. Elezi qualifies as a treating source and is entitled to an analysis under *Wilson's* good-reason rule. Notably, the ALJ weighed the opinion of Dr. Elezi last, after affording substantial and great weight to the opinions of non-examining state agency consultants' opinions and little weight to the Dr. Weaver's opinion as an examining consultant. Put differently, although the record contained both a treating source opinion and an examining source opinion, the ALJ relied on the non-examining consultants' assessments. After setting out Dr. Elezi's stated opinion regarding Plaintiff's limitations, albeit with some liberties, the ALJ merely concluded that he would "accord this assessment little weight as his sit, stand and walk limitations are not consistent with the objective evidence." (R. at 29.) Other than a mischaracterization of one aspect

13

of his opinion,[2] the ALJ simply said "Dr. Elezi's assessment is too restrictive and not consistent with evidence of record and he has not submitted clinical findings or treatment notes corroborating his assessment." (*Id.*)

The ALJ does not sufficiently set forth good reasons for his failure to accord Dr. Elezi's opinion controlling weight. His statement that Dr. Elezi's opinion is inconsistent with the totality of the medical evidence of record does not comport with *Wilson*'s requirement that numerous factors must be considered where an ALJ does not give a treating source's opinion controlling weight. The ALJ does in fact acknowledge that Dr. Elezi has been Plaintiff's primary care physician since June 2011, thus cursorily recognizing the treatment relationship and its nature and extent. The ALJ, however, gives no analysis regarding the supportability of the opinion or the specialization of the treating source in Internal Medicine. *See Wilson*, 378 F.3d at 544.

Critically, the ALJ failed to provide any detailed analysis behind his conclusion that Dr. Elezi's opinion is inconsistent with the totality of the medical evidence. "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 552. Here, the ALJ's opinion is conclusory. To the extent the ALJ does identify a purported discrepancy in the record

---

[2]The ALJ indicated that Dr. Elezi opined that Plaintiff could "rarely reach[] overhead . . ." and then excoriated the opinion because "[w]hile it is acknowledged that [Plaintiff] may be limited to occasional reaching with his right arm, there is no evidence that he is limited to rarely reaching. There is no evidence of left arm limitation . . . ." (R. at 29.) Dr. Elezi, however, opined that Plaintiff could rarely reach in all directions, including overhead. (R. at 536.) By the time Dr. Elezi rendered this opinion, he had been treating Plaintiff for nearly a year and had the benefit of numerous imaging and diagnostic tests. His opinion did not necessarily relate to any limitations Plaintiff might or might not have had with his left arm.

with respect to Plaintiff's reaching limitation, his criticism is unwarranted in light of the actual medical source statement.  As a result, it does not satisfy the good-reason rule.  The ALJ's stated reasons are not "good" for purposes of the treating physician rule because they did not in fact address the totality of the medical record.

The ALJ failed to credit the longitudinal relationship consisting of repeated examinations and extensive lab reports of other specialists from which Dr. Elezi derived his opinion. These medical signs and laboratory findings support Dr. Elezi's opinions.  This omission is particularly important in light of the ALJ's decision to give substantial weight and great weight to the opinions of non-examining consultants' opinions that were provided a year before Dr. Elezi rendered his opinion regarding Plaintiff's limitations.  Dr. Elezi sent Plaintiff to several specialists for imaging and other testing.  Dr. Elezi's opinion came after months of diagnostic treatment and records, such as a hepatic function panel dated October 31, 2011 where all values were abnormal and a CT scan of his abdomen and pelvis obtained on April 13, 2012, in which Plaintiff was found to have "[m]arked" splenomegaly with multiple round hypoechoic nodules within the spleen and kidneys, compatible with sarcoidosis involvement of the abdomen."  That scan also indicated a possibility of cirrhosis and revealed a small fat containing umbilical hernia.  The non-examining consultants had no such records in April of 2011.

Rather than provide good reasons for the effective rejection of the treating source opinion, the ALJ offered vague generalizations.  Finally, as to the ALJ's statement that Dr. Elezi's opinion should be given "little"weight because he "has not submitted clinical findings or treatment notes corroborating his assessment" (R. at 29), this assertion is incorrect.  The record contains a plethora

of objective testing and reports provided to Dr. Elezi before he rendered his opinion. Thus, the ALJ violated the good-reason rule.

The ALJ's violation of the good reason rule was not harmless error. The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error. 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Id.* Since *Wilson*, the Sixth Circuit has continued to conduct a harmless-error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement. *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. A'ppx 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement, the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless-error justifications).

In this case, Dr. Elezi's opinions are not "so patently deficient that the Commissioner could not possibly credit [them]." *Wilson*, 378 F.3d at 547. Second, the ALJ's decision that Plaintiff could perform light work is not consistent with Dr. Elezi's opinion such that his decision to discount it completely was not "irrelevant." Finally, the ALJ's decision does not otherwise meet the goals

16

of *Wilson*'s requirement to provide good reasons for not affording a treating physician's opinion controlling weight.

In sum, the Court finds that the ALJ's failure to give good reasons for not according controlling weight to Dr. Elezi's opinion warrants remand to the Commissioner. *See Hensley*, 573 F.3d at 267 (quoting *Wilson*, 378 F.3d at 545 (internal quotations omitted)) ("[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").[3]

## VII.  CONCLUSION

Plaintiff seeks an award of benefits or, in the alternative, remand for further consideration.  Here, remand is the appropriate course.  As the ALJ's errors were largely procedural in nature, the Court cannot conclude based on the current record that all factual issues have been resolved.  *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("[T]he court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.") (internal quotations omitted).

In sum, from a review of the record as a whole, the Court concludes that substantial evidence does not support the ALJ's decision denying benefits.  Accordingly, this case is **REMANDED** to the Commissioner of Social Security for further consideration.  The Clerk is

---

[3]This finding obviates the need for in-depth analysis of Plaintiff's alternative but related assignment of error regarding whether the ALJ violated the treating physician rule by giving undue weight to the non-examining opinions.

17

**DIRECTED** to enter judgment in favor of Plaintiff and to terminate this case from the Court's pending docket.

     **IT IS SO ORDERED.**

                                                <u>    s/ Algenon L. Marbley                    </u>
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED:  September 27, 2016**